## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| **TALICIA WATTS**, an individual, | Case No.: 2:23-cv-12906 |
| Plaintiff, | **COMPLAINT** |
| v. | **DEMAND FOR JURY TRIAL** |
| **GOOD CAKES AND BAKES, LLC, d/b/a GOOD CAKES AND BAKES**, a Michigan limited liability company, **APRIL ANDERSON**, an individual, and **MICHELLE ANDERSON**, an individual, | |
| Defendants. | |

Plaintiff Talicia Watts ("Plaintiff"), by her undersigned counsel, hereby brings this Complaint under the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201 *et seq.*, and the Michigan Improved Workforce Opportunity Wage Act ("WOWA"), M.C.L. § 408.931 *et seq.*, against Defendants Good Cakes and Bakes, LLC, d/b/a Good Cakes and Bakes, a Michigan limited liability company, April Anderson, an individual, and Michelle Anderson, an individual (collectively "Defendants"), and states as follows:

## THE PARTIES

1.     Plaintiff is a Michigan resident who was employed by Defendants as a Baker Assistant from April 2022 until October 2023.

1

2.      Good Cakes and Bakes, LLC, d/b/a Good Cakes and Bakes (hereinafter "Good Cakes and Bakes"), is a Michigan limited liability company engaged in operating a bakery located at 19363 Livernois Avenue, Detroit, Michigan 48221.

3.      April Anderson and Michelle Anderson are Michigan residents who own and operate Good Cakes and Bakes, and at all times hereinafter mentioned, actively supervised the day-to-day operations and management of Good Cakes and Bakes in relation to its employees. April Anderson and Michelle Anderson acted directly or indirectly in the interest of Good Cakes and Bakes in relation to its employees, exercising operational control over the business, supervising employees, determining and controlling payroll practices, including setting pay and hiring and firing employees, and are employers under section 3(d) of the FLSA.

4.      Defendants' business activities, as described herein, are and were related and performed through unified operations or common control for a common business purpose and constitute an enterprise under Section 3(r) of the FLSA.

## JURISDICTION

5.      This Court has subject matter jurisdiction over Plaintiff's FLSA claims under 28 U.S.C. § 1331 because the FLSA claims raise a federal question.

6.      This Court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367 because the state law claims and the FLSA claims are so closely related that they form part of the same case or controversy.

7.     This Court has personal jurisdiction over Defendants because Defendants reside in Michigan and conduct business in Michigan.

## VENUE

8.     Venue is proper in the Eastern District of Michigan under 28 U.S.C. § 1391(b)(1) because Defendants reside in this District.

## INTRADISTRICT ASSIGNMENT

9.     A substantial part of the events giving rise to Plaintiff's claims occurred in Wayne County, Michigan; thus, this action is assigned to the Southern Division.

## GENERAL ALLEGATIONS

10.    This is an action for unpaid overtime, unpaid minimum wages, and liquidated damages under sections 206, 207, and 216 of the FLSA.

11.    Defendants employed Plaintiff as a Baker Assistant at GOOD CAKES AND BAKES, 19363 Livernois Avenue, Detroit, Michigan 48221.

12.    Plaintiff regularly worked over 40 hours per week for Defendants and was a nonexempt employee entitled to overtime pay.

**Fair Labor Standards Act (FLSA)**

13.    The FLSA was enacted to protect workers from substandard wages and oppressive working hours. *Barrentine v. Arkansas-Best Freight System, Inc.*, 450 U.S. 728, 739 (1981).

14.    Nearly 80 years ago, the Supreme Court wrote that the "the prime

purpose" of the FLSA is "to aid the unprotected, unorganized and lowest paid of the nation's working population; that is, those employees who lacked sufficient bargaining power to secure for themselves a minimum subsistence wage." *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 707 n.18 (1945). The Court explained that Congress passed this law as

> a recognition of the fact that due to the unequal bargaining power as between employer and employee, certain segments of the population required federal compulsory legislation to prevent private contracts on their part which endangered national health and efficiency and as a result the free movement of goods in interstate commerce.

*Id.* at 706-07.

15.     The FLSA is designed to ensure each employee the Act covers receives "[a] fair day's pay for a fair day's work" and protects them from "the evil of overwork as well as underpay." *Barrentine*, 450 U.S. at 739 (internal citations and quotations omitted).

16.     The FLSA generally requires covered employers to pay nonexempt employees (1) a minimum wage of at least $7.25 per hour and (2) at least 1.5 times the employee's "regular rate" of pay for all hours worked over 40 in a workweek. 29 U.S.C. §§ 206(a)(1), 207(a)(1).

**FLSA Individual And Enterprise Coverage**

17.     The FLSA applies to employees who are either (1) "engaged in commerce or in the production of goods for commerce," (individual coverage) or (2)

"employed in an enterprise engaged in commerce or in the production of goods for commerce" (enterprise coverage). *Id*. §§ 206(a), 207(a)(1).

18.     Plaintiff is individually covered by the FLSA, as Plaintiff regularly performed covered activities that were directly essential to the production of goods shipped in interstate commerce, specifically, preparing and creating baked goods such as bread, pastries, cakes, and cookies destined for out-of-state customers.

19.     For enterprise coverage to attach, the employer must (1) have employees engaged in commerce or in the production of goods for commerce, or have employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce, and (2) have an annual gross volume of sales of at least $500,000. *Id*. §§ 207(a)(1), 203(s)(1)(A).

20.     The first prong of the enterprise coverage test is satisfied, as Defendants' employees regularly handle goods or materials that have been moved in or produced for commerce, including bakery ovens, bun and sheet pan equipment, dough preparation equipment, bread slicers, commercial mixers and accessories, holding and proofing cabinets, baking utensils, cooking ingredients, baking pans, credit card processing equipment, and janitorial and cleaning supplies.

21.     The second prong of the enterprise coverage test is also satisfied, as Defendants' gross annual sales exceed $500,000.

22.     Hence, Defendants are a covered enterprise under the FLSA.

**Individual Liability Under The FLSA**

23.     Individual corporate officers may be held liable for violations under the FLSA by a corporation. *Reyes-Trujillo v. Four Star Greenhouse, Inc.*, 513 F. Supp. 3d 761, 788 (E.D. Mich. 2021).

24.     An "employer" is "any person acting directly or indirectly in the interest of an employer in relation to an employee…." 29 U.S.C. § 203(d).

25.     The FLSA contemplates that "'more than one employer can be simultaneously responsible for FLSA obligations.'" *Fegley v. Higgins*, 19 F.3d 1126, 1131 (6th Cir. 1994) (citation omitted).

26.     The test to determine whether a person is an "employer" responsible for FLSA obligations is one of "economic reality." *United States Dep't of Labor v. Cole Enters.*, 62 F.3d 775, 778 (6th Cir. 1995) (citing *Fegley*, 19 F.3d at 1131).

27.     "'The overwhelming weight of authority is that a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages.'" *Dole v. Elliott Travel & Tours, Inc.*, 942 F.2d 962, 965 (6th Cir. 1991) (quoting *Donovan v. Agnew*, 712 F.2d 1509, 1511 (1st Cir. 1983)).

28.     Specifically, "[o]ne who is the chief executive officer of a corporation, has a significant ownership interest in it, controls significant functions of the business, and determines salaries and makes hiring decisions has operational control

and qualifies as an 'employer' for the purposes of FLSA." *Cole Enters.*, 62 F.3d at 778; *see Dole*, 942 F.2d at 965 (finding that "corporate officers with a significant ownership interest who had operational control of significant aspects of the corporation's day to day functions, including compensation of employees" were employers under the FLSA).

29.     The pertinent facts heavily weigh in favor of "employer" status.

30.     April Anderson and Michelle Anderson are the owners and April Anderson is the pastry chef of Good Cakes and Bakes.

31.     April Anderson and Michelle Anderson had operational control over significant aspects of Good Cakes and Bakes' day-to-day functions, including employee compensation.

32.     April Anderson and Michelle Anderson were responsible for Good Cakes and Bakes' day-to-day management, including payroll, accounting, invoicing, hiring and firing employees, supervising and controlling employee work schedules, determining employee pay rates and methods of payment, maintaining employment records, determining wages owed to employees, and enforcing workplace policies and procedures.

33.     April Anderson and Michelle Anderson interviewed, hired, and fired Plaintiff.

34.     April Anderson and Michelle Anderson supervised and trained Plaintiff

and controlled her work schedule, work assignments, and conditions of employment.

35.     April Anderson and Michelle Anderson had the authority to hire, fire, and discipline Plaintiff and had plenary control over Plaintiff's manner of performing her duties.

36.     April Anderson and Michelle Anderson controlled Plaintiff's pay rate and method of compensation and maintained Plaintiff's employment records.

37.     April Anderson and Michelle Anderson told Plaintiff what to do, where to go, when to be there, how to do the work, and oversaw her work on a daily basis.

38.     April Anderson and Michelle Anderson not only had operational control over Good Cakes and Bakes' business activities but also were directly involved in Good Cakes and Bakes' pay and employment practices. Both are therefore "employers" under 29 U.S.C. § 203(d) and are independently and jointly responsible for any unpaid overtime or minimum wage compensation.

## FLSA Overtime Violations

39.     Plaintiff regularly worked over 40 hours per week for Defendants.

40.     From April 2022 until about October 2022, Defendants paid Plaintiff an hourly wage.

41.     On or about October 2022, APRIL ANDERSON told Plaintiff that she was tired of paying overtime wages to Plaintiff.

42.     On or about October 2022, Defendants classified Plaintiff as a "bona

fide executive" and agreed to pay Plaintiff a semimonthly salary of $1,519.23.

43.     Defendants violated 29 U.S.C. § 207(a)(1) by misclassifying Plaintiff as a "bona fide executive" and failing to pay overtime wages to Plaintiff at 1.5 times her "regular rate" of pay for all hours worked over 40 in a workweek.

**The FLSA And Its Relevant Exemptions**

44.     The FLSA exempts from overtime pay any employee employed in a bona fide executive, administrative, or professional capacity. 29 U.S.C. § 213(a)(1).

45.     "Application of the exemption is limited to those circumstances plainly and unmistakably within the exemption's terms and spirit." *Douglas v. Argo-Tech Corp.*, 113 F.3d 67, 70 (6th Cir. 1997) (citation omitted).

46.     "The employer bears the burden of proving that the exemption applies to the employee in question." *Id*. (citation omitted).

47.     Plaintiff is a "bona fide executive" if: (1) she's paid on a salary basis at a rate of at least $684 per week; (2) her primary duty is management of the enterprise or a customarily recognized department or subdivision thereof; (3) she customarily and regularly directs the work of two or more other employees; and (4) she has the authority to hire or fire other employees or her suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight. 29 C.F.R. § 541.100.

48.     The first element – i.e., whether Plaintiff was paid on a salary basis at

a rate of at least $684 per week – weighs heavily in favor of non-exempt status, as Defendants regularly deducted Plaintiff's predetermined salary based on her work hours. These deductions violated the "salary basis test," 29 C.F.R. § 541.602, because they specifically related to the quality or quantity of Plaintiff's work.

49.    The second element – i.e., whether Plaintiff's primary duty is management of the enterprise or a customarily recognized department or subdivision thereof – weighs heavily in favor of non-exempt status, as Plaintiff never managed the enterprise or a customarily recognized department or subdivision thereof.

50.    Other than babysitting the bakery when April Anderson and Michelle Anderson were absent, Plaintiff was vested with little to no independent authority in the performance of her limited managerial duties.

51.    Although Plaintiff was superficially given the title of "kitchen manager," her principal duties were always those of a Baker Assistant, i.e., serving customers at counters where baked goods are sold; greeting customers, providing advice, taking orders, and packaging baked goods; monitoring baked goods on display and restocking them as needed; managing inventory of ingredients and culinary supplies; tracking ingredient expiry dates and ensuring food safety; applying icings or other toppings to baked goods; cleaning and tidying the bakery; and handling cash and credit card payments.

52.    The third element – i.e., whether Plaintiff customarily and regularly

directed the work of two or more other employees – weighs heavily in favor of non-exempt status, as Plaintiff rarely if ever managed anyone and lacked the authority to set employee pay rates, work schedules, or methods of compensation.

53.    The fourth element – i.e., whether Plaintiff had the authority to hire or fire other employees or whether her suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees were given particular weight – weighs heavily in favor of non-exempt status, as Plaintiff lacked the authority to hire, fire, promote, or discipline employees; and her suggestions and recommendations as to the hiring, firing, advancement, or promotion of other employees were rarely if ever given particular weight.

54.    In sum, Plaintiff was not paid on a "salary basis" nor did she perform the duties of a "bona fide executive," and thus, Defendants cannot satisfy their burden of showing that Plaintiff was "employed in a bona fide executive" capacity.

**FLSA Minimum Wage Violations**

55.    "[A] cause of action under the [FLSA] for unpaid minimum wages or unpaid overtime compensation and for liquidated damages 'accrues' when the employer fails to pay the required compensation for any workweek at the regular pay day for the period in which the workweek ends." 29 C.F.R. § 790.21(b).

56.    Plaintiff worked at least 40 hours for Defendants during the October 1, 2023 to October 14, 2023 pay period.

57.     Defendants were legally obligated to pay Plaintiff for this work <u>no later than the next regular payday, October 20, 2023</u>. *Id.*

58.     On October 12, 2023, April Anderson terminated Plaintiff via email and promised to pay Plaintiff her last paycheck by October 20, 2023.

> I can direct deposit your last paycheck in your bank account, if you return the key and any GCB property that you might have by Wednesday 10/18. If not, I will deduct the cost of the keys and any other GCB property and mail you a check on Friday 10/20.

(**Exhibit 1**, April Anderson Email.)[1]

59.     Defendants never paid Plaintiff her last paycheck.

60.     Plaintiff is not in possession of Defendants' property.

61.     Plaintiff never authorized Defendants to withhold her paycheck or to make deductions from her wages.

62.     Defendants regularly made unauthorized deductions from Plaintiff's wages in violation of M.C.L. § 408.77.

63.     Plaintiff's claim for unpaid work from October 1, 2023 to October 14, 2023 accrued on the next regular payday (October 20, 2023). 29 C.F.R. § 790.21(b).

64.     Defendants violated 29 U.S.C. § 206(a)(1) by refusing to pay Plaintiff her last paycheck.

65.     Defendants violated 29 U.S.C. § 206(a)(1) by refusing to pay Plaintiff

---

[1] Curiously, April Anderson backdated the email to October 6, 2023 and characterized Plaintiff's termination as a "resignation." (*Id.*)

the FLSA minimum wage ($7.25 per hour) for the hours Plaintiff worked during the October 1, 2023 to October 14, 2023 pay period.

**Late Payment Under The FLSA**

66.    "Under the FLSA, a lawsuit to recover unpaid compensation must 'be commenced within two years after the cause of action accrued,' unless the cause of action arose 'out of a willful violation,' in which case the lawsuit must 'be commenced within three years after the cause of action accrued.'" *Hughes v. Region VII Area Agency on Aging*, 542 F.3d 169, 187 (6th Cir. 2008) (citation omitted)

67.    "A cause of action is deemed to accrue, as a general rule, '<u>at each regular payday immediately following the work period during which the services were rendered for which the wage or overtime compensation is claimed</u>.'" *Id*. (citation omitted) (emphasis added).

68.    Defendants regularly bounced payroll checks or otherwise failed to pay Plaintiff her wages by the next regular payday.

69.    For example, on July 14, 2023, Plaintiff deposited her paycheck at Community Choice Credit Union in the amount of $1,194.62, but five days later the check was returned unpaid because Defendants' account was frozen.

70.    While the FLSA does not explicitly state when overtime or minimum wages must be paid, an employer must still pay its employees in a timely manner.

71.    The FLSA's liquidated damages provision, 29 U.S.C. § 216(b),

"constitutes a Congressional recognition that failure to pay the statutory minimum on time may be so detrimental to maintenance of the minimum standard of living … that double payment must be made in the event of delay…." *O'Neil*, 324 U.S. at 707.

72.    Courts have interpreted the FLSA's implicit timely payment obligation to ordinarily require employers to pay wages by "the employee's regular payday." *Biggs v. Wilson*, 1 F.3d 1537, 1541 (9th Cir. 1993); *see also, e.g., Roland Elec. Co. v. Black*, 163 F.2d 417, 421 (4th Cir. 1947) ("[I]f [an employer] fails to pay overtime compensation promptly and when due on any regular payment date, the statutory action for the unpaid minimum and liquidated damages given under Section 16(b) immediately arises in favor of the aggrieved employee."); *Atl. Co. v. Broughton*, 146 F.2d 480, 482 (5th Cir. 1944) ("[I]f an employer on any regular payment date fails to pay the full amount of the minimum wages and overtime compensation due an employee, there immediately arises an obligation upon the employer to pay the employee the difference between the wages paid and the wages due, plus an equal additional amount as liquidated damages").[2]

73.    The Ninth Circuit's decision in *Biggs*, 1 F.3d 1537, is instructive. There, the court examined an FLSA violation stemming from an employer's failure to pay minimum wages for 14 to 15 days after the employees' regular payday.

---

[2] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), the Eleventh Circuit Court of Appeals adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981.

74.     The court held that because the FLSA provides for liquidated damages,

> [u]nless there is a due date after which minimum wages become unpaid, imposing liability for both unpaid minimum wages and liquidated damages would be meaningless. The statute must therefore contemplate a time at which § 206 is violated, or, put another way, when minimum wages become unpaid. Unpaid minimum wages have to be unpaid as of some distinct point, otherwise courts could not compute either the amount of wages which are unpaid, or the additional equal amount of liquidated damages. The only logical point that wages become unpaid is when they are not paid at the time work has been done, the minimum wage is due, and wages are ordinarily paid—on payday.

*Id.* at 1539-40 (internal quotations omitted).

75.     The Ninth Circuit pointed to 29 C.F.R. § 778.106, which "requires that overtime compensation be paid on the employee's regular payday." *Id.* at 1543.

76.     The court found, "[i]f overtime wages must be paid in cash or negotiable instruments on the employee's regular payday, then certainly the minimum wage must also be paid on the employee's regular payday." *Id.*

77.     Indeed, 29 C.F.R. § 778.106 states the "general rule" is that overtime compensation must be paid on the employee's regular payday:

> There is no requirement in the Act that overtime compensation be paid weekly. <u>The general rule is that overtime compensation earned in a particular workweek must be paid on the regular pay day for the period in which such workweek ends</u>.

*Id.* (emphasis added).

78.     Other courts have similarly held that the FLSA "plainly contemplates that overtime compensation shall be paid in the course of employment and not accumulated beyond the regular pay day." *Rigopoulos v. Kervan*, 140 F.2d 506, 507

(2d Cir. 1943); *Nolan v. City of Chi.*, 162 F. Supp. 2d 999, 1004 (N.D. Ill. 2001) ("The Wage and Hour Division expects overtime to be computed and paid on a pay period by pay period basis unless it is impractical to do so."); *Mullins v. Howard Cnty.*, 730 F. Supp. 667, 670 (D. Md. 1990) ("if the amount of overtime compensation can be readily determined, it should be provided on the next regularly scheduled payday"); *Merritt v. Cascade Corp.*, No. 3:19-CV-01695-YY, 2020 WL 7082693, at *2 (D. Or. Dec. 3, 2020) ("[I]t is clear that the FLSA requires overtime wages to be paid on the regular payday."); *Pascoe v. Mentor Graphics Corp.*, 199 F. Supp. 2d 1034, 1061 (D. Or. 2001) ("Because Mentor Graphics paid Pascoe's wages on August 31, 2000, and not by his regular payday, it violated 29 U.S.C. § 206, entitling Pasco to liquidated damages"); *Avalos v. United States*, 54 F.4th 1343, 1347 (Fed. Cir. 2022) ("any employer who does not timely pay minimum or overtime wages is liable for liquidated damages"); *Thorpe v. Util. Masters*, No. 4:09CV92, 2010 WL 11530466, at *2 (E.D. Tex. July 21, 2010) ("an employer's liability becomes fixed, and damages accrue, when the employer fails to pay the employee the required wages on the regular payday for any workweek"); *In re Tug Robert J. Bouchard Corp.*, No. BR 20-34758, 2023 WL 3984198, at *4 (S.D. Tex. June 13, 2023) ("Claims for violations of § 206 accrue on the date the wages should have been paid but were not, an employer who pays no wages on that date has violated the statute."); *Rother v. Lupenko*, 515 Fed. Appx. 672, 675 (9th Cir. 2013) ("[T]here

is no distinction between late payment violations and minimum wage violations: late payment is a minimum wage violation.").

79.    Notably, the DOL's website states, "[i]f the regular payday for the last pay period an employee worked has passed and the employee has not been paid, contact the Department of Labor's Wage and Hour Division or the state labor department." (Last Paycheck | U.S. Department of Labor (dol.gov).)

80.    Although Plaintiff agrees that natural disasters or similar events beyond the employer's control may allow an employer to make late payments without violating the FLSA, this case does not present such exceptional circumstances.

81.    The delay in payments was solely due to Defendants' own indifference and refusal to comply with the FLSA's timely payment obligation.

82.    Defendants did not pay Plaintiff her paychecks in a timely manner.

83.    Defendants lacked a legitimate business purpose for the late payments.

84.    The late payments were not motivated by a legitimate business purpose.

85.    The late payments were unreasonable and had the effect of evading the FLSA's substantive minimum wage and overtime provisions and resulted in an unreasonable delay in the payment of Plaintiff's wages.

**<u>Plaintiff Has An Actual Claim Against Defendants For Liquidated Damages</u>**

86.    An FLSA cause of action accrues at payday immediately following the period for which wages are owed. *Hughes*, 542 F.3d at 187; 29 C.F.R. § 790.21(b).

87.    The moment Defendants failed to pay Plaintiff on the next payday triggered her eligibility to sue for wages and liquidated damages under the FLSA.

88.    The fact that Defendants paid Plaintiff her wages prior to litigation did not obliterate her legal right to seek additional damages.

89.    Indeed, courts addressing this issue directly have held that an employer's tender of previously unpaid wages does not extinguish the employee's FLSA claim to recover liquidated damages. *See, e.g., O'Neil*, 324 U.S. 697 (holding that employees did not waive their right to liquidated damages under a predecessor version of § 216(b) when they accepted late payment for overtime wages and signed a general release of claims under the FLSA); *Broughton*, 146 F.2d 480.

90.    In *Broughton*, the Fifth Circuit evaluated whether a contract of accord and satisfaction extinguished liquidated damages under a predecessor version of § 216(b). The court answered in the negative, holding that,

> if an employer on any regular payment date fails to pay the full amount of the minimum wages and overtime compensation due an employee, there immediately arises an obligation upon the employer to pay the employee the difference between the wages paid and the wages due, plus an equal additional amount as liquidated damages; and the payment thereafter of the balance due as wages, even though made prior to suit, does not release the accrued liability for liquidated damages.

*Id*. at 482.

91.    More recently, the Eleventh Circuit cited *Broughton* with approval, noting that "the former Fifth Circuit held that liquidated damages are available under

the act to an employee if the employer failed to pay wages or overtime on the regular payment date." *Arroyave v. Rossi*, 296 Fed. Appx. 835, 836 (11th Cir. 2008).

92.     Similarly, the Eleventh Circuit has held that there are only two ways for employees to settle or compromise their FLSA claims: (1) through supervision of the DOL; and (2) through the district court's approval of a proposed settlement. *Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1352-53 (11th Cir. 1982).

93.     Outside these two scenarios, no payment or settlement can extinguish an employee's right to liquidated damages. *Id*. at 1355.

94.     Plaintiff had no obligation to accept her late wages as settlement when she had a claim for additional damages.

95.     Accordingly, if Defendants assert affirmative defenses of mootness or lack of subject matter jurisdiction in connection with Plaintiff's late payment claims, such affirmative defenses are insufficient as a matter of law.

**FLSA Recordkeeping Violations**

96.     While an employee bears the burden of proving that she performed work for which she was not properly compensated, *Myers v. Copper Cellar Corp.*, 192 F.3d 546, 551 (6th Cir. 1999) (citing *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686-87 (1946)), the FLSA provides that every employer subject to the statute's provisions "shall make, keep, and preserve such records of the persons employed by him and of the wages, hours, and other conditions and practices of

employment maintained by him." 29 U.S.C. § 211(c).

97.     The regulations mandate tracking the hours worked each workday and workweek, as well as total wages paid for each pay period. 29 C.F.R. § 516.2(a).

98.     The Supreme Court recognized that where an employer failed to keep the proper and accurate records required by the FLSA, the employer rather than the employee should bear the consequences of that failure. *Mt. Clemens Pottery Co.*, 328 U.S. at 687-88). The Court stated:

> In such a situation we hold that an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate.

*Id*.

99.     Defendants failed to keep proper and accurate records of, among other things, Plaintiff's wages and work hours, and therefore, Plaintiff is entitled to the relaxed burden-shifting scheme enunciated in *Mt. Clemens Pottery Co*.

**FLSA Liquidated Damages**

100.    An employer who violates the FLSA is liable for unpaid overtime and minimum wage compensation plus an additional equal amount as liquidated damages (i.e., double damages). 29 U.S.C. § 216(b).

101.    Liquidated damages "are compensation, not a penalty or punishment." *Elwell v. U. Hosps. Home Care Services*, 276 F.3d 832, 840 (6th Cir. 2002) (citation and quotations omitted).

102.    "The court may, in its discretion, refuse to award liquidated damages '*if, and only if,* the employer shows that he acted in good faith and that he had reasonable grounds for believing that he was not violating the Act.'" *Dole*, 942 F.2d at 967 (citation omitted). Absent such proof, a district court has no discretion to deny an award of liquidated damages. *Elwell*, 276 F.3d at 840.

103.    The employer's burden of establishing good faith is "substantial." *Id*. To demonstrate good faith, an employer "must show that [it] took affirmative steps to ascertain the Act's requirements, but nonetheless violated its provisions." *Martin v. Indiana Michigan Power Co.*, 381 F.3d 574, 584 (6th Cir. 2004) (citation and quotations omitted). "[A]n employer who negligently misclassifies an employee … is not acting in good faith." *Id.* at 584. (citation omitted).

104.    Notably, district courts have held that late payment triggers FLSA liquidated damages. *See Wilson v. Jamaica Serv. Program for Older Adults, Inc.*, No. 21-CV-1263 (BMC), 2021 WL 4750098, at *3 (E.D.N.Y. Oct. 12, 2021) ("[E]mployees paid late are entitled to liquidated damages."); *In re Tug Robert J. Bouchard Corp.*, 2023 WL 3984198, at *4 ("An employer violates § 206 of the FLSA and exposes itself to § 216(b) liquidated damages when it pays late wages.");

*Valdes v. Kendall Healthcare Group, LTD*, No. 1:22-CV-22046-KMM, 2023 WL 3711012, at *8 (S.D. Fla. May 10, 2023) ("Late payments in violation of the FLSA require the employer to pay liquidated damages in the amount of the violation.").

105.   Given that Plaintiff spent most of her time performing the duties of a Baker Assistant, and that she was vested with little to no independent authority in the performance of her limited managerial duties, it is difficult to ascertain how Defendants could have believed that Plaintiff was a "bona fide executive."

106.   Moreover, given the extremely limited nature of Plaintiff's management responsibilities, even if Defendants *did* believe that Plaintiff was a "bona fide executive," such belief was unreasonable.

107.   Finally, it is difficult to ascertain how Defendants could have reasonably believed that the FLSA authorizes an employer to pay its employees late or to withhold employees' final paychecks.

108.   Hence, Defendants cannot meet their substantial burden to demonstrate that they acted in good faith and with the reasonable belief that their pay scheme complied with the FLSA, and therefore, Plaintiff is entitled to liquidated damages.

**Breach Of Contract Allegations**

109.   The elements of a breach of contract claim under Michigan law are: (1) a contract between the parties, (2) the terms of the contract require performance of a certain action, (3) a breach, and (4) the breach caused injury to the other party.

*Collins v. CitiMortgage, Inc.*, 974 F. Supp. 2d 1034, 1041 (E.D. Mich. 2013).

110.   On or about October 2022, APRIL ANDERSON, on behalf of Defendants, offered Plaintiff the opportunity to continue performing Baker Assistant services for Defendants in exchange for a semimonthly salary of $1,519.23.

111.   On or about October 2022, Plaintiff accepted APRIL ANDERSON's offer and continued performing Baker Assistant services for Defendants, creating a valid contract between Plaintiff and Defendants whereby Defendants were obligated to pay Plaintiff a semimonthly salary of $1,519.23 for her Baker Assistant services.

112.   From about October 2022 to October 2023, Plaintiff performed up to 40 or more hours per week of Baker Assistant services for Defendants. In performing this work, Plaintiff fulfilled her duties under the contract.

113.   However, Defendants materially breached the contract by regularly making unauthorized deductions from Plaintiff's predetermined salary and by failing to pay Plaintiff for the work she performed during the October 1, 2023 to October 14, 2023 pay period.[3] Hence, Defendants did not pay Plaintiff her contractual semimonthly salary of $1,519.23 every other week.

114.   Defendants' breaches deprived Plaintiff of wages owed to her under the

---

[3] Defendants rarely furnished Plaintiff with pay stubs, and thus, Plaintiff does not possess the pay records or other pertinent documents necessary to identify the number of unauthorized deductions, the dates of such unauthorized deductions, or the amounts of such unauthorized deductions.

contract.

115.  Plaintiff is owed wages at her contractual semimonthly salary of $1,519.23 for her time spent performing Baker Assistant services for Defendants from about October 2022 to October 2023.

116.  Plaintiff earned these wages at the moment she performed the Baker Assistant services for Defendants; and the wages were due to be paid to Plaintiff no later than the regular payday for the period in which such services were performed.

117.  Plaintiff's Baker Assistant services were performed pursuant to Defendants' express instructions and constituted principal work activities that were integral and indispensable to Defendants' business; and Defendants were contractually obligated to pay Plaintiff for such services at her contractual semimonthly salary of $1,519.23.

118.  The fact that Defendants deliberately chose not to pay Plaintiff her contractual semimonthly salary of $1,519.23 for the Baker Assistant services she performed for Defendants, and that Plaintiff continued working for Defendants despite not being paid her contractual semimonthly salary of $1,519.23, does not somehow relieve Defendants of their obligation to pay Plaintiff her contractual semimonthly salary of $1,519.23 for her Baker Assistant services.

**COUNT I**
**VIOLATION OF THE FLSA, 29 U.S.C. § 201 *et seq.***
**FAILURE TO PAY OVERTIME WAGES**

119. Plaintiff re-alleges and incorporates all previous paragraphs herein.

120. Defendants were "employers" and Plaintiff was an "employee" under 29 U.S.C. §§ 203(d) and (e)(1).

121. Defendants "suffered or permitted" Plaintiff to work and thus "employed" her under 29 U.S.C. § 203(g).

122. Defendants violated 29 U.S.C. § 207(a)(1) by failing to pay overtime wages to Plaintiff at the statutory rate of 1.5 times her "regular rate" of pay for all hours worked over 40 in a workweek.

123. Defendants are in exclusive possession of the time and pay records and other documents necessary to compute the exact number of unpaid overtime hours.

124. The FLSA, 29 U.S.C. § 216(b), provides that as a remedy for a violation of 29 U.S.C. § 207(a)(1), an employee is entitled to her unpaid overtime wages plus an additional equal amount as liquidated damages plus attorneys' fees and costs.

**COUNT II**
**VIOLATION OF THE FLSA, 29 U.S.C. § 201 *et seq.***
**FAILURE TO PAY MINIMUM WAGES**

125. Plaintiff re-alleges and incorporates all previous paragraphs herein.

126. Defendants violated 29 U.S.C. § 206(a)(1) by refusing to pay Plaintiff the FLSA minimum wage ($7.25 per hour) for the hours Plaintiff worked during the

October 1, 2023 to October 14, 2023 pay period.

127.   The FLSA, 29 U.S.C. § 216(b), provides that as a remedy for a violation of 29 U.S.C. § 206(a)(1), an employee is entitled to her unpaid minimum wages plus an additional equal amount as liquidated damages plus attorneys' fees and costs.

## COUNT III
### VIOLATION OF THE FLSA, 29 U.S.C. § 201 *et seq.*
### FAILURE TO TIMELY PAY OVERTIME WAGES

128.   Plaintiff re-alleges and incorporates all previous paragraphs herein.

129.   Defendants violated 29 U.S.C. § 207(a)(1) by failing to pay overtime wages to Plaintiff by the next regular payday.

130.   Defendants are in exclusive possession of the time and pay records and other documents necessary to identify the exact dates that Plaintiff was paid and the exact workweeks for which she was paid late.

131.   The FLSA, 29 U.S.C. § 216(b), provides that as a remedy for a violation of 29 U.S.C. § 207(a)(1), an employee is entitled to her unpaid overtime wages plus an additional equal amount as liquidated damages plus attorneys' fees and costs.

## COUNT IV
### VIOLATION OF THE FLSA, 29 U.S.C. § 201 *et seq.*
### FAILURE TO TIMELY PAY MINIMUM WAGES

132.   Plaintiff re-alleges and incorporates all previous paragraphs herein.

133.   Defendants violated 29 U.S.C. § 206(a)(1) by failing to pay Plaintiff the FLSA minimum wage ($7.25 per hour) by the next regular payday.

134.   Defendants are in exclusive possession of the time and pay records and other documents necessary to identify the exact dates that Plaintiff was paid and the exact workweeks for which she was paid late.

135.   The FLSA, 29 U.S.C. § 216(b), provides that as a remedy for a violation of 29 U.S.C. § 206(a)(1), an employee is entitled to her unpaid minimum wages plus an additional equal amount as liquidated damages plus attorneys' fees and costs.

**COUNT V**
**VIOLATION OF THE WOWA, M.C.L. § 408.931 *et seq.***
**FAILURE TO PAY OVERTIME WAGES**

136.   Plaintiff re-alleges and incorporates all previous paragraphs herein.

137.   Defendants were "employers" and Plaintiff was an "employee" within the meaning of the WOWA.

138.   Defendants "employed" Plaintiff within the meaning of the WOWA.

139.   Plaintiff was a nonexempt employee under the WOWA.

140.   The WOWA requires covered employers to pay nonexempt employees at least 1.5 times the employee's "regular rate" of pay for all hours worked over 40 in a workweek. M.C.L. § 408.934a(1).

141.   Defendants violated M.C.L. § 408.934a(1) by failing to pay overtime wages to Plaintiff at the statutory rate of 1.5 times her "regular rate" of pay for all hours worked over 40 in a workweek.

142.   M.C.L. § 408.931(1)(a) provides that as a remedy for a violation of

M.C.L. § 408.934a(1), an employee is entitled to her unpaid overtime wages plus an equal amount as liquidated damages plus attorneys' fees and costs.

## COUNT VI
## VIOLATION OF THE WOWA, M.C.L. § 408.931 *et seq.*
## FAILURE TO PAY MINIMUM WAGES

143.   Plaintiff re-alleges and incorporates all previous paragraphs herein.

144.   The WOWA requires covered employers to pay nonexempt employees a minimum wage of at least $10.10 per hour. *Id*. §§ 408.933, 408.934.

145.   Defendants violated M.C.L. §§ 408.933 and 408.934 by refusing to pay Plaintiff the Michigan minimum wage ($10.10 per hour) for the hours Plaintiff worked during the October 1, 2023 to October 14, 2023 pay period.

146.   M.C.L. § 408.931(1)(a) provides that as a remedy for a violation of M.C.L. §§ 408.933 and 408.934, an employee is entitled to her unpaid minimum wages plus an equal amount as liquidated damages plus attorneys' fees and costs.

## COUNT VII
## VIOLATION OF THE WOWA, M.C.L. § 408.931 *et seq.*
## FAILURE TO TIMELY PAY OVERTIME WAGES

147.   Plaintiff re-alleges and incorporates all previous paragraphs herein.

148.   Defendants violated M.C.L. § 408.934a(1) by failing to pay overtime wages to Plaintiff by the next regular payday.

149.   M.C.L. § 408.931(1)(a) provides that as a remedy for a violation of M.C.L. § 408.934a(1), an employee is entitled to her unpaid overtime wages plus an

equal amount as liquidated damages plus attorneys' fees and costs.

## COUNT VIII
## VIOLATION OF THE WOWA, M.C.L. § 408.931 *et seq.*
## FAILURE TO TIMELY PAY MINIMUM WAGES

150.   Plaintiff re-alleges and incorporates all previous paragraphs herein.

151.   Defendants violated M.C.L. §§ 408.933 and 408.934 by failing to pay Plaintiff the Michigan minimum wage ($10.10 per hour) by the next regular payday.

152.   M.C.L. § 408.931(1)(a) provides that as a remedy for a violation of M.C.L. §§ 408.933 and 408.934, an employee is entitled to her unpaid minimum wages plus an equal amount as liquidated damages plus attorneys' fees and costs.

## COUNT IX
## BREACH OF CONTRACT

153.   Plaintiff re-alleges and incorporates all previous paragraphs herein.

154.   Plaintiff's breach of contract claim seeks to recover what is commonly referred to as "straight time" pay or "gap time" pay.

155.   "Gap time" refers to the gap between hours paid and non-overtime hours worked. *Athan v. U.S. Steel*, 364 F. Supp. 3d 748, 754 n.2 (E.D. Mich. 2019).

156.   Plaintiff's breach of contract claim is not duplicative of her FLSA or WOWA claims, as "claims for gap time are not cognizable under the FLSA, regardless of whether Plaintiffs seek compensation for pure gap time or overtime gap time." *Id*. at 755.

157.   The parties, for valuable consideration, entered into a valid and

enforceable contract for the performance of Baker Assistant services by Plaintiff in return for money payments by Defendants.

158.   Defendants had a binding and valid contract with Plaintiff to pay Plaintiff a semimonthly salary of $1,519.23 in consideration of the Baker Assistant services Plaintiff performed for Defendants.

159.   Plaintiff accepted the terms of Defendants' contractual promises and performed under the contract by carrying out the work she performed each shift, including the Baker Assistant services that were required of her, accepted by Defendants, and that she performed.

160.   Defendants regularly made unauthorized deductions from Plaintiff's predetermined salary and failed to pay Plaintiff for the work she performed during the October 1, 2023 to October 14, 2023 pay period. Hence, Defendants did not pay Plaintiff her contractual semimonthly salary of $1,519.23 every other week.

161.   Defendants breached their contract with Plaintiff by not paying Plaintiff her contractual semimonthly salary of $1,519.23 every other week for the Baker Assistant services she performed for Defendants.

162.   As a direct and proximate result of Defendants' contractual breaches, Plaintiff has been damaged in an amount to be determined at trial.

## COUNT X
## UNJUST ENRICHMENT

163.   Plaintiff re-alleges and incorporates all previous paragraphs herein.

164.   This Count is pled in the alternative to Count IX, *supra*, pursuant to Fed. R. Civ. P. 8(d)(2)-(3). *See Solo v. United Parcel Serv. Co.*, 819 F.3d 788, 796 (6th Cir. 2016) (permitting a plaintiff to plead breach of contract and unjust enrichment in the alternative).

165.   Under Michigan law, a claim for unjust enrichment requires (1) the receipt of a benefit by defendant from plaintiff, and (2) an inequity resulting to plaintiff because of the retention of the benefit by defendant. *Howard v. City of Detroit*, No. 20-10382, 2023 WL 6396582, at *5 (E.D. Mich. Sept. 30, 2023).

166.   Defendants promised Plaintiff a predetermined semimonthly salary of $1,519.23 in consideration of the Baker Assistant services Plaintiff performed for Defendants' benefit.

167.   Plaintiff relied on Defendants' promise for the predetermined semimonthly salary of $1,519.23 and performed by doing her job and carrying out her required work duties.

168.   Defendants were unjustly enriched by not paying Plaintiff her predetermined semimonthly salary of $1,519.23 every other week for the Baker Assistant services she performed for Defendants.

169.   Plaintiff performed Baker Assistant services at the request of, without objection by, and for the benefit of, Defendants.

170.   Defendants received and accepted Plaintiff's Baker Assistant services

and enjoyed the benefits derived therefrom, such as increased profits, without having fully paid for the same.

171.   Defendants were unjustly enriched by the retention of monies received pursuant to the Baker Assistant services Plaintiff performed for Defendants' benefit, without having fully paid Plaintiff for the same.

172.   Plaintiff suffered detriment due to Defendants' failure to pay her the predetermined semimonthly salary of $1,519.23 for the Baker Assistant services she performed for Defendants, in that Plaintiff was deprived of the ability to utilize that time, effort, and her resources in a profitable manner.

173.   Defendants regularly made unauthorized deductions from Plaintiff's predetermined salary and failed to pay Plaintiff for the work she performed during the October 1, 2023 to October 14, 2023 pay period. Hence, Defendants did not pay Plaintiff the predetermined semimonthly salary of $1,519.23 every other week.

174.   By not paying Plaintiff the predetermined semimonthly salary of $1,519.23 for the Baker Assistant services she performed, Defendants artificially lowered their labor costs, and thus, established an unfair competitive advantage over other bakeries that lawfully complied with federal and state wage-and-hour law.

175.   As a direct and proximate result of Defendants' actions, Plaintiff suffered damages, including loss of wages, and is entitled to the reasonable value of the benefit conferred.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests judgment as follows:

a.   Finding that April Anderson and Michelle Anderson were Plaintiff's employers under 29 U.S.C. § 203(d) such that they are independently and jointly responsible for any unpaid overtime or minimum wages;

b.   Finding that Defendants violated 29 U.S.C. § 207(a)(1) by failing to pay overtime wages to Plaintiff at the statutory rate of 1.5 times her "regular rate" of pay for all hours worked over 40 in a workweek;

c.   Finding that Defendants violated 29 U.S.C. § 206(a)(1) by refusing to pay Plaintiff the FLSA minimum wage for the hours she worked during the October 1, 2023 to October 14, 2023 pay period;

d.   Finding that Defendants violated 29 U.S.C. § 207(a)(1) by failing to pay overtime wages to Plaintiff by the next regular payday;

e.   Finding that Defendants violated 29 U.S.C. § 206(a)(1) by failing to pay Plaintiff the FLSA minimum wage by the next regular payday;

f.   Finding that Defendants violated M.C.L. § 408.934a(1) by failing to pay overtime wages to Plaintiff at the statutory rate of 1.5 times her "regular rate" of pay for all hours worked over 40 in a workweek;

g.   Finding that Defendants violated M.C.L. §§ 408.933 and 408.934 by refusing to pay Plaintiff the Michigan minimum wage for the hours she worked during the October 1, 2023 to October 14, 2023 pay period;

h.   Finding that Defendants violated M.C.L. § 408.934a(1) by failing to pay overtime wages to Plaintiff by the next regular payday;

i.   Finding that Defendants violated M.C.L. §§ 408.933 and 408.934 by failing to pay Plaintiff the Michigan minimum wage by the next regular payday;

j.   Finding that Defendants breached their contract with Plaintiff (or, in the alternative, that Defendants were unjustly enriched) by failing to pay Plaintiff the predetermined semimonthly salary of $1,519.23 for the Baker Assistant services she performed for Defendants;

k.  Liquidated damages under 29 U.S.C. § 216(b) in an amount equal to Plaintiff's unpaid overtime and minimum wage compensation;

l.  Reasonable attorneys' fees and costs under 29 U.S.C. § 216(b);

m.  Liquidated damages under M.C.L. § 408.931(1)(a) in an amount equal to Plaintiff's unpaid overtime and minimum wage compensation;

n.  Reasonable attorneys' fees and costs under M.C.L. § 408.931(1)(a);

o.  Pre- and post-judgment interest; and

p.  Such other and further relief as the Court deems appropriate.

## **JURY DEMAND**

Plaintiff hereby demands a jury trial under Fed. R. Civ. P. 38.

Dated: November 15, 2023

*/s/ Rod M. Johnston*
Rod M. Johnston (P80337)
**Johnston Law, PLLC**
6911 Duchess Court
Troy, Michigan 48098
Tel: (586) 321-8466
rod@johnstonlawflsa.com

*Attorney for Plaintiff*

34